UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARY REIFSTECK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:04CV742 RWS |
| | ) | |
| PACO BUILDING SUPPLY CO., | ) | |
| a wholly owned subsidiary of | ) | |
| C.F. VATTEROTT & CO., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Mary Reifsteck was employed in the accounting department of Defendant Paco Building Supply Co. She claims that Paco discriminated against her based on her age, sex, disability and retaliation. She also alleges that she was subjected to a hostile work environment while at Paco. Paco has moved for summary judgment. Because Reifsteck has failed to present sufficient facts to support her claims for disparate treatment based on age, sex and disability discrimination I will grant Paco summary judgment on those claims. Reifsteck has, however, provided sufficient evidence to proceed with her claims of a hostile work environment based on age and for retaliation. Paco's motion directed to these claims will be denied.

*Background*

In 1986, Reifsteck, then aged 55, was hired as an administrative assistant by C.F. Vatterott & Co. Greg Vatterott was the president of Vatterott &Co. At some point Reifsteck was put in charge of the accounts payable department.

In 1994, Reifsteck began working in the accounting department of Paco Building Supply,

a wholly owned subsidiary of C.F. Vatterott Co. Reifsteck performed accounts receivable duties. In 2001, Salvatore Easterley was hired by Paco as its vice president and general manager. Easterley reported directly to Greg Vatterott, the president of C.F. Vatterott & Co.

In August 2001, Paco hired Leon McCaw, aged 29, who was assigned to work in the accounting department with Reifsteck and Doris Reed. Easterley directed Reifsteck to show McCaw everything she knew about credit and collections at Paco. McCaw was originally given the accounts payable duties while Reifsteck was responsible for accounts receivable.

Several months after McCaw was hired, Easterley met with Reifsteck and told her that McCaw would be taking over her job responsibilities. Reifsteck was to play an advisory role to McCaw and assist him with various problems that arose. During this meeting, Easterley asked Reifsteck when she was going to retire and asked her why she would not retire. Easterley reiterated that McCaw would be taking over her job.

Effective September 2002, McCaw's and Reifsteck's responsibilities were switched, McCaw was to handle accounts receivable and Reifsteck was to handle accounts payable. Reifsteck's pay and benefits did not change at that time.

About a month after the change in her duties, Reifsteck began to complain that McCaw was playing "dirty tricks" on her in an attempt to get her job. She complained that McCaw and Reed played their radios too loudly at their decks which prevented Reifsteck from doing her work. She also asserts that paperwork and checks mysteriously disappeared and reappeared in an apparent attempt to upset her job. She felt as though she was being harassed into quitting her job.

In January 2003, Paco determined that it needed to trim its business and to cut its workforce due to slower than predicted sales. Two male sales representatives were laid off and

so was McCaw, then aged 31. Reifsteck's hours were reduced from 40 hours a week to 30 hours a week and her vacation benefits were also reduced. At the same, however, Paco transferred a younger part-time receptionist to a full-time position and hired a new full-time receptionist.

During a meeting between Reifsteck and Easterley to discuss the reduction of her hours and benefits, Reifsteck told Easterley that she was going to file an EEOC claim regarding the change of her employment. Easterley threatened to fire Reifsteck. After this meeting, Reifsteck alleges that she was regularly called into Easterley's office to discuss the subject of Reifsteck's retirement. Despite the fact that Reifsteck said that she had no intention of retiring before she was seventy-five years old, she was repeatedly subjected to a "ritual" of being called into the office to discuss her retirement. Easterley asked her at one point how much money it would take to get her to retire. Reifsteck complained of this behavior to her manager, Bob Swift, but he took no action. Reifsteck alleges that she became paranoid and had health issues because of Easterley's methodical discussions of her retirement.

On April 25, 2003, Reifsteck filed a complaint with the Equal Employment Opportunity Commission (EEOC) and with the Missouri Commission on Human Rights (MCHR). She alleged claims of age, sex, and disability discrimination as well as a claim for retaliation. The EEOC investigated her claims which led to a mediation of her claims on August 17, 2003. At that mediation Easterley told Reifsteck "don't bother coming back to work" two times. After the mediation session Reifsteck filed a claim for unemployment compensation. She did not return to work at Paco. Reifsteck and Paco never settled her claims.

***Legal Standard***

In considering whether to grant summary judgment, a district court examines the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any ...." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

Summary judgment should seldom be granted in employment discrimination cases. Hindman v. Transkrit Corp., 145 F.3d 986, 990 (8th Cir. 1998); Hardin v. Hussman Corp., 45 F.3d 262, 264 (8th Cir. 1995). This is because such cases often depend on inferences rather than on direct evidence and, therefore, summary judgment is not appropriate unless all of the evidence points one way and is not susceptible to a reasonable inference for the nonmovant.

Direct evidence of employment discrimination is rare, therefore, most cases rely on

circumstantial evidence. In the absence of direct evidence of discrimination, courts employ the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)(Title VII case).[1]

Under the burden-shifting analysis, the plaintiff must first establish a prima facie case of intentional discrimination. McDonnell Douglas, 411 U.S. at 802; Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir. 1994). If the plaintiff establishes a prima facie case, a presumption of discrimination is established and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. 411 U.S. at 802. The defendant need not persuade the court that the articulated reason was the basis of the employer's action; rather, it must simply provide some evidence of a non-discriminatory reason or reasons for its action. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993).

Upon the proffer of such evidence, the presumption of discrimination established by the prima facie case "simply drops out of the picture." Id. at 510-11. The burden then shifts back to the plaintiff to prove that the reason articulated by the employer was really a pretext for discrimination. Aucutt, 85 F.3d at 1316. A rejection of the employer's proffered non-discriminatory reason by itself or combined with elements of the prima facie case may be enough to establish, but does not compel, an inference of intentional discrimination. St. Mary's Honor Center, 509 U.S. at 511.

The burden of proving discrimination remains on the plaintiff at all times. Id. at 515-16.

---

[1] See Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1332 (8th Cir. 1996)(applying McDonnell Douglas to an ADEA claim); Epps v. City of Pine Lawn, 353 F.3d 588, 591 (8th Cir. 2003) (applying McDonnell Douglas burden-shifting analysis to claims under the ADA and the MHRA).

It is not enough to merely discredit defendant's articulated reason for the adverse employment action. A plaintiff must always establish that the real reason for defendant's action was impermissible discrimination. Id.; see also Huston v. McDonnell Douglas Corp., 63 F.3d 771, 777 (8th Cir. 1995). To avoid summary judgment, a plaintiff must present evidence that, when viewed in its entirety: (1) creates a fact issue as to whether the employer's proffered reason is pretextual, and (2) creates a reasonable inference that a discriminatory motive was a determinative factor in the adverse employment decision. Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996).

Reifsteck has asserted claims of sex, age, and disability discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, and under the Missouri Human Rights Act (MHRA), R.S.Mo. 213.010, *et seq.*

### *Discussion*

Reifsteck asserts claims for disparate treatment and for a hostile work environment. She has also asserted a claim for retaliation based on the Easterley's reaction to her statement to him that she would file a claim with the EEOC. Reisteck alleges that she was ultimately fired by Paco during the EEOC sponsored mediation of her claims.

Reifsteck has received a right to sue letters from the EEOC and the MCHR. On her charge form she checked the sex, age, disability, retaliation, and continuing action boxes. In the narrative section of the charge form she asserts that Paco discriminated against her on the basis of sex and age. The EEOC had Reifsteck provide supplemental information for her claims and recorded that information. That supplemental information provides further factual allegations in

support of her claims for harassment and disability discrimination. The information was recorded in a document dated August 22, 2003.

Reifsteck's claims of sex, age, and disability discrimination under the MHRA are analyzed in the same manner as claims under Title VII, the ADEA, and the ADA. Alanga v. Smithville R-II School District, 324 F.3d 975, 979 (8th Cir. 2003)(MHRA and Title VII), Schuler v. Phillips Petroleum Co., 169 F.3d 1171, 1172 (8th Cir. 1999)(MHRA and ADEA), and Epps v. City of Pine Lawn, 353 F.3d 588, 591 n.3 (8th Cir.2003) (MHRA and ADA).

*Disparate treatment claims*

Reifsteck's Complaint asserts disparate treatment claims based on race, sex, and disability. To establish a disparate treatment claim, a plaintiff must show that: (1) she is a member of a protected class; (2) she was meeting the legitimate expectations as to her duties; (3) she suffered an adverse employment action; and (4) circumstances give rise to an inference of discrimination as similarly situated employees, who were not members of the protected group, were treated differently. Gilooly v. Missouri Dept. of Health and Senior Services, 421 F.3d 734, 737-739 (8th Cir. 2005).

Reifsteck is able to establish the first three elements of a *prima facie* case for her age and sex disparate treatment claims. Reifsteck's age and sex fall into a protected class requirement. There is not any evidence that her work was in any way deficient. The adverse employment action that she asserts is the reduction of her work hours with its commensurate loss of pay and benefits. Reifsteck's Complaint also asserts that she was terminated by Paco at the EEOC mediation. This alleged adverse employment action is much more relevant to her retaliation claim than to her disparate treatment claim. I will assume for argument, however, that this allegation is

part of her adverse employment claim.

The forth element of her *prima facie* case requires Reifsteck to offer evidence that there were individuals similarly situated in all respects to her who were treated differently. The individuals used as comparators must have dealt with the same supervisor and have been subject to the same standards as Reifsteck. Gilmore v. AT & T, 319 F.3d 1042, 1046 (8th Cir. 2003).

At the time Paco reduced Reifsteck's hours and benefits it laid off two male sales representatives and Reifsteck's male co-worker McCaw who was then aged 31. Only McCaw is alleged to have had the same supervisor and was subjected to the same standards as Reifsteck. This evidence does not create an inference of discrimination for sex and age because McCaw, who was a much younger male employee, was terminated while Reifsteck only had her hours and benefits reduced. Reifsteck claims that she was terminated at the mediation session. Even if this were true it would merely evidence that Reifsteck was treated similarly to, if not more favorably than, McCaw who had been terminated months earlier.

Reifsteck also alleges that at the time her hours were reduced Paco transferred a younger part-time receptionist to a full-time position and hired a new full-time receptionist. There is not any evidence in the record that these employees were similarly situated to Reifsteck. Paco's treatment of these employees does not raise an inference of disparate treatment in Reifsteck's claim.

Reifsteck's disability claim under the ADA is based on the fact that she broke her leg and used a walking device for approximately two months. She alleges that Easterley said that he was worried that she may trip over a rug in the office due to her injured leg. Based on this evidence I find that Reifsteck failed to establish that she had or was perceived by Paco to have had a

disability within the meaning of the ADA. In addition, Easterley's concern about her tripping over a rug does not rise to the level of an adverse employment action.[2]

For the above stated reasons I find that Reifsteck has failed to establish a disparate treatment claim based on sex, age, or disability and Paco shall have summary judgement on these claims.

*Hostile work environment*

Reifsteck alleges in her Complaint that she was subjected to a hostile work environment based on her age, sex, and her disability. The evidence in support of this claim deals with the repeated questioning by Easterley of when Reifsteck was going to retire. There is not any evidence in the record that supports a harassment claim based on sex or disability.

To establish a claim of hostile work environment, a plaintiff must show that: (1) she was a member of a protected group; (2) she was subjected to unwelcome harassment in the workplace; (3) the harassment was based on protected trait; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. Gilooly, 421 F.3d at 738.

Reifsteck's is a member of a protected group based on her age. Her claim is supported by her allegations that she felt pressured to retire after McCaw was hired. Easterley told Reifsteck that McCaw was to assume her job. Easterley asked her why she would not retire and presumably make way for McCaw. Reifsteck alleges that McCaw set about a campaign of "dirty tricks" to upset her and get her to retire. She complained to management about problems she was having in the office with McCaw, and with Reed's playing her radio too loudly. Management

---

[2] Nor do these facts support a hostile work environment claim alleged in the Complaint.

asserts that it properly dealt with Reifsteck's complaints. But Reifsteck's evidence creates an inference that Paco was pressuring her to retire and that it did not regret that she was being made uncomfortable by the activities of her co-workers.

This inference is strongly reinforced by Reifsteck's allegations that in late 2003 and/or early 2004 she began to be subjected to a "ritual" questioning by Easterley of when she was going to retire. Reifsteck alleges that she complained to Bob Swift about the pressure placed on her to retire but he took no action. Notably, Swift was allegedly present several times when Easterley inquired about Reifsteck's retirement. Swift also reported to Easterley.

Reifsteck alleges that she became paranoid and had health issues because of Easterley's methodical discussions of her retirement.

The law of this Circuit is that an employer may make reasonable inquiries into the retirement plans of its employees and that employees should not be able to rely on those inquiries to prove intentional discrimination. Montgomery v. John Deere & Co., 169 F.3d 556, 560 (8th Cir. 1999). "However, retirement inquiries can sometimes be so unnecessary and excessive as to constitute evidence of discriminatory harassment." Id. Reifsteck's evidence creates a question of fact as to whether Easterley's continual inquiry about her retirement was so unnecessary and excessive as to constitute discriminatory harassment.

As a result, I find that Paco is not entitled to summary judgment on Reifsteck's claim of discrimination due to a hostile work environment based on age.

*Retaliation*

Paco argues that Reifsteck's retaliation claim is not properly before the Court. It asserts that Reifsteck merely checked the box marked "retaliation" on the EEOC claim form and did not

provide any further information regarding this claim. Reifsteck filed her EEOC charge *pro se*. Courts will liberally construe discrimination claims made by *pro se* litigants. Shannon v. Ford Motor Co., 72 F.3d 678, 685 (8th Cir. 1996). However, there is a great difference between "liberally reading a claim which lacks specificity ... and inventing *ex nihilo* a claim which was simply not made" by a plaintiff. Id.

Although Reifsteck's retaliation claim is not detailed in the fact section of the charge form it is not invented from thin air. Anyone reading the charge form, including the EEOC and Paco, realized that Reifsteck, acting *pro se*, was asserting a claim for retaliation. The EEOC had notice of this claim and had a duty to inquire of Reifsteck the basis for this claim (the record does not show whether the EEOC investigated this claim or not). Based on the liberal reading of *pro se* EEOC charges I find that Reifsteck fairly raised this claim.

To prove a retaliation claim, a plaintiff must show (1) that she engaged in statutorily protected activity; (2) an adverse employment action was taken against her; and (3) a causal connection exists between the two events. Gilooly, 421 F.3d at 739.

Two events give rise to Reifsteck's retaliation claim. First, when she told Easterley that she was filing a claim with the EEOC about the reduction of her hours and benefits Easterley threatened to fire her. This allegation is clearly an intimidating response which could be construed as an effort by Easterley to coerce Reifsteck from exercising her right to seek protection from discrimination in the workplace.

The second event is Reifsteck's alleged termination at the EEOC mediation of her charge against Paco. Reifsteck's position is that Easterley fired her at the mediation. Paco argues that Easterley was simply identifying a condition regarding a settlement of Reifsteck's claims. The

parties dispute the intent of Easterley's statements. I find that a material issue of fact exists about this dispute. This issue cannot be decided as a mater of law must be resolved by the trier of fact, a jury in this case.

Paco argues that any claim of retaliation that arose out of the mediation is not admissible under Fed. R. Civ. P. 408. If such evidence was kept from a jury it would enable employers to discriminate against employees in the guise of mediation and settlement negotiations. The federal statutes against employment discrimination cannot be compromised by cloaking discrimination in the form of such negotiations.

Reifsteck's allegations about Easterley's threat to fire her and her termination at the EEOC mediation raise a question of fact as to whether these events were causally connected to Reifsteck's statutorily protected activity of informing Easterley she was going to file a complaint with the EEOC and doing so.

Finally, Paco argues that Reifsteck's alleged termination at the EEOC mediation is a discrete act that is beyond the scope of her charge and requires a separate charge of discrimination. To the contrary, a suit may include allegations of discrimination reasonably related to the allegations listed in the administrative charge, including new acts occurring during the pendency of the administrative charge. Aramburu v. Boeing Co., 112 F.3d 1398, 1409 (10th Cir. 1997). Reifsteck's alleged termination undisputedly occurred during the pendency of her administrative charge.

For these reasons, I will deny Paco's motion for summary judgment as to Reifsteck's claim of retaliation.

Accordingly,

**IT IS HEREBY ORDERED that** Defendant Paco Building Supply Co.'s motion for summary judgment [#27] is **GRANTED** as to Plaintiff Mary Reifsteck's claims of employment discrimination based on disparate treatment and based on a hostile work environment based on sex and disability. Paco's motion [#27] is **DENIED** as to Reifsteck's claim of employment discrimination based on an age related hostile work environment and based on retaliation.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 20th day of October, 2005.